# EXHIBIT 1

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

**NOTICE TO DEFENDANT:** NORTHROP GRUMMAN CORPORATION, a
*(AVISO AL DEMANDADO):* multi-national entity, and DOES 1 through 50,
inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

JAMIE POWERS, WILLIAM DILLARD, CORY JONES, JEFFERY KOUT,
DOUGLAS MILLER, DAVID PERHAM, JOHN WILLIAMS, all individuals and
ROES 1-50

*FOR COURT USE ONLY*
*(SOLO PARA USO DE LA CORTE)*

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego

**06/12/2020** at 01:54:34 PM

Clerk of the Superior Court
By Eddie De La Torre,Deputy Clerk

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is: <br> *(El nombre y dirección de la corte es):* <br> Superior Court of California, County of San Diego <br> 330 West Broadway <br> San Diego, California  92101 | CASE NUMBER: <br> *(Número del Caso):* <br> 37-2020-00020015-CU-WT-CTL |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: Karen R. Frostrom, Esq.
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

THORSNES BARTOLOTTA MCGUIRE LLP
2550 Fifth Avenue, Eleventh Floor, San Diego, CA 92103

| | | | |
|---|---|---|---|
| DATE: <br> *(Fecha)* | 06/15/2020 | Clerk, by *E. De La Torre* | , Deputy <br> *(Adjunto)* |
| | | *(Secretario)* | 619-236-9363 |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify)*:

3. ☐ on behalf of *(specify)*:

   under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)          ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
   ☐ other *(specify)*:

4. ☐ by personal delivery on *(date)*:

| | | |
|---|---|---|
| Form Adopted for Mandatory Use <br> Judicial Council of California <br> SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465 <br> www.courtinfo.ca.gov <br> Westlaw Doc & Form Builder™ |

ELECTRONICALLY FILED
Superior Court of California,
County of San Diego

**06/12/2020** at 01:54:34 PM

Clerk of the Superior Court
By Eddie De La Torre, Deputy Clerk

THORSNES BARTOLOTTA MCGUIRE LLP
Vincent J. Bartolotta, Jr. Esq.
State Bar Association No. 55139
Karen R. Frostrom, Esq.
State Bar Association No. 207044
2550 Fifth Avenue, Eleventh Floor
San Diego, CA 92103
Phone: (619) 236.9363  Fax: (619) 236.9653

CURRAN & CURRAN LAW
Michael D. Curran, Esq./ATP/CFII
State Bar Association No. 148006
Susan M. Curran, Esq.
State Bar Association No. 227886
Quail Garden Corporate Center
662 Encinitas Boulevard, Suite 260
Encinitas, CA 92024
Telephone: (760) 634.1229 Fax: (760) 634.0729

Attorneys for Plaintiff

## SUPERIOR COURT FOR THE STATE OF CALIFORNIA
## COUNTY OF SAN DIEGO, DOWNTOWN DIVISION

| | |
|---|---|
| JAMIE POWERS, WILLIAM DILLARD, CORY JONES, JEFFERY KOUT, DOUGLAS MILLER, DAVID PERHAM, JOHN WILLIAMS, all individuals and ROES 1-50<br><br>        Plaintiffs,<br><br>        v.<br><br>NORTHROP GRUMMAN CORPORATION, a multi-national entity, and DOES 1 through 50, inclusive,<br><br>        Defendants. | CASE NO. 37-2020-00020015-CU-WT-CTL<br><br>COMPLAINT FOR DAMAGES FOR WRONGFUL DISCHARGE IN VIOLATION OF FUNDAMENTAL PUBLIC POLICIES, VIOLATION OF LABOR CODE 1102.5, UNFAIR BUSINESS PRACTICES, COMPENSATORY/PUNITIVE DAMAGES<br><br>REQUEST FOR JURY TRIAL |

Plaintiffs, JAMIE POWERS, WILLIAM DILLARD, CORY JONES, JEFFERY KOUT, DOUGLAS MILLER, DAVID PERHAM, JOHN WILLIAMS and ROES 1-50, [hereinafter referred to as "Plaintiffs"] brings this Complaint against Defendant NORTHROP GRUMMAN CORPORATION, multi-national entity [hereinafter referred to as "Defendant"/"NORTHROP GRUMMAN"] and DOES 1 through 50 as follows:

///

POWERS et al v. NORTHRUP GRUMMAN
Pleading

# I. PARTIES AND VENUE

1.      Plaintiffs and unnamed as yet, ROES, are individuals who were at all relevant times herein, working/residing in San Diego County, State of California.

2.      Defendant NORTHROP GRUMMAN is a US and global multi-billion dollar company head-quartered in Falls Church, Virginia, was at all relevant times herein, licensed to and doing business in San Diego County, State of California.  Venue/Jurisdiction is additionally proper in this Court because the events and injuries complained of herein occurred in San Diego County, State of California. In addition, Venue/Jurisdiction is proper in this Court pursuant to Cal. Code of Civil Procedure, CCP §§394, 395 and San Diego Court Local Rule of Court 1.2.2 C.  Venue is proper in this jurisdiction for individual Defendants as follows;  In a contract case, venue is proper where the Defendants reside or the contract was entered into.  In a tort case, venue is proper where the Defendant resides or the claim/cause of action arose.   CCP §395. For Corporate entity Defendants venue is proper as follows; "A corporation or association may be sued in the county where the contract is made or is to be performed, or where the obligation or liability arises, or the breach occurs; or in the county where the principal place of business of such corporation is situated, subject to the power of the court to change the place of trial as in other cases." CCP §395.5

3.      It is anticipated Defendant NORTHROP GRUMMAN will challenge venue as Defendants required Plaintiffs to sign an arbitration agreement whereby venue is in Virginia. However, employers may only compel employees to agree to arbitrate all work-related disputes, including claims for wrongful discharge in violation of public policy, retaliation, discrimination and harassment, if the arbitration agreement meets certain tests of fairness and due process. *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal. 4th 83, 6 P.3d  669.   Here, NORTHROP GRUMMAN'S arbitration provision wholly fails to comply with the fairness and due process requirements of *Armendariz*. NORTHROP GRUMMAN's arbitration provision fails to provide for a neutral arbitrator, fails to provide for more than minimal discovery, fails to require a written arbitration award and it does not require the employer to bear the expenses associated with access to the arbitration forum. Additionally, mandating California employees to arbitrate in Virginia, when the acts giving rise to liability occurred in San Diego, CA violates the CA *Code of*

POWERS et al v. NORTHRUP GRUMMAN
Pleading

- 2 -

1   *Civil Procedure* §395.5 and is unconscionable. NORTHROP GRUMMAN is a private employer

2   doing business in San Diego, California and is bound by California procedural, substantive and

3   statutory law.

4       4.    On information and belief, Defendants operate and conduct themselves in all respects

5   as the agents, employees, representatives, alter-egos, co-conspirators, and partners of one another.

6   Furthermore, when they performed the acts alleged herein, Defendants and each of them, acted

7   collectively and in concert, such that there exists an identity of interest and lack of lawful distinction

8   between them. On information and belief, each of the Defendants were, at all relevant times, the

9   agent and employee of the other Defendants and, in doing the things alleged, acted within the course

10  and scope of that agency and employment and/or ratified the acts of the others.

11      5.    Plaintiffs are presently unaware of the true names and capacities of Defendants named

12  as DOES 1 through 50, inclusive, and therefore sues these Defendants by their fictitious names.

13  Plaintiffs will seek leave of court to amend this Complaint to allege the true names and capacities

14  when they are ascertained. On information and belief, each of the fictitiously named Defendants are

15  legally responsible for the acts and omissions alleged and actually and proximately caused and/or

16  contributed to the injuries and damages alleged.

17      **II.  <u>BRIEF SUMMARY OF THE COMPLAINT</u>**

18      6.    Defendant NORTHROP GRUMMAN is a national/global entity who designs,

19  engineers, manufacturers, operates, services and maintains some of the world's most advanced

20  manned and unmanned aerial vehicles/aircraft ["UAVs"]. NORTHRUP GRUMMAN specializes

21  in UAVs, Autonomous Systems, Commercial Aviation, Communications, Global Platform

22  Modernization, Integrated Avionics, Manned Aircraft, Military Aircraft Systems, Navigation

23  Systems, Radar Systems, Strike, and Aerospace Structures for military and commercial customers

24  worldwide.

25      7.    In particular in this case, during the time period of January 2011, and continuing to

26  present, NORTHROP GRUMMAN had contracted with the United States Air Force ["USAF"] to

27  provide Global Hawk UAV aircraft, operations and support including NORTHROP GRUMMAN

28  trained personnel in the Battlefield Airborne Communications Node program ["BACN"] in ongoing

POWERS et al v. NORTHRUP GRUMMAN      - 3 -
Pleading

1   Air Force operations in the middle east. [FA-876-09-C-0010 the "contract"].  The NORTHROP

2   GRUMMAN-USAF contract was, and the continuation of the contract is, a very valuable, lucrative

3   and profitable contract for NORTHROP GRUMMAN.

4       8.      Plaintiffs are informed and believe under the USAF- NORTHROP GRUMMAN

5   contract, NORTHROP GRUMMAN was paid a premium for all hours billed by their employees,

6   whether the employee actually worked those hours, or not.   Thus, there was a substantial

7   financial/profit incentive for NORTHROP GRUMMAN to encourage employees to always

8   maximize and flat bill their time under the USAF BACN program contract.  Even when employees

9   complained there was not enough work to bill for a full 12 hour day and attempted to instead work

10  9 hour shifts, Plaintiffs and other employees were directed by NORTHROP GRUMMAN

11  supervisors/management to always flat bill the maximum 12 hours, plus travel time of 1.5 hours and

12  essentially told to "sit down, shut up and color..."  There is no factual/logical dispute NORTHRUP

13  GRUMMAN's supervisors/management directed the over billing as the practice went on for

14  approximately three years with NORTHROP GRUMMAN supervisors/management approving all

15  Plaintiffs/employees' 12/13.5 hour flat billed time cards, until reported to the USAF.

16      9.      Plaintiffs are all now civilian (some former military) previous employees of

17  NORTHROP GRUMMAN employed by NORTHROP GRUMMAN in San Diego and deployed

18  overseas in the middle east in the BACN program all in support of the Global Hawk UAV aircraft

19  as contracted by the US Air Force.  Plaintiffs were assigned to two different site locations, Site 1 and

20  Site 3, and lived on site and off site commuting to the on site NORTHRUP GRUMMAN/USAF

21  Force Sites. In addition to their salaries/hourly rates, Plaintiffs were offered payment for travel time

22  from the hotel to the work site as well as for the return trip, with a total of 2-3 times their normal

23  stateside paychecks and with a maximum deployment of 75% in a calendar year.  Plaintiffs were

24  directed where to stay, what to drive, when and where to work.

25      10.     During the time period of on or before January, 2011 to at least October 2013,

26  Plaintiffs were directed by NORTHROP GRUMMAN supervisors, Usher Barnam, John McCann

27  and Kari Premus, to flat bill a minimum 13.5 hours per day, 12hrs on shift, plus 1.5 hours for

28  commuting and to be on site 7 days a week, whether there was work to do or not and despite for

POWERS et al v. NORTHRUP GRUMMAN                    - 4 -
Pleading

1  some time not even having any UAV/aircraft at the location.  Later, Plaintiffs were instructed to flat

2  bill 12 hours per day, but only required to be on site for 8 hours.  Despite objecting to NORTHROP

3  GRUMMAN supervisors that there was not enough work to bill for 12 hours, they were directed to

4  bill the full 12 hours and during a portion of the relevant time were allowed to be off site "on call"

5  for 4 hours of that billed time.  At no time did any of the Plaintiffs intend/believe they were falsely

6  billing or cheating anyone; they were simply complying with the specific billing and performance

7  instructions of their various NORTHROP GRUMMAN, supervisors.

8      11.    Plaintiffs are informed and believe that in or about early 2016 to 2018, the USAF

9  became aware of some of these alleged false billing practices directed by NORTHROP GRUMMAN

10  supervisors/management and initiated a criminal investigation by and through the US Attorney's

11  Office for the Southern District of California, Department of Justice ["USAO/DOJ"] As part of that

12  investigation, Plaintiffs were interviewed by NORTHROP GRUMMAN management and attorneys

13  and NORTHROP GRUMMAN provided and paid for independent counsel to represent Plaintiffs

14  and be interviewed by the USAO/DOJ attorneys.  At all times herein, Plaintiffs accurately reported

15  to NORTHROP GRUMMAN management/attorneys and the USAO/DOJ attorneys that during the

16  relevant time frame they did flat bill 12-13.5 hours per day, as they had been directed and instructed

17  by NORTHROP GRUMMAN supervisors/management.  During the investigation, Plaintiffs also

18  accurately reported they complained to their supervisor, that they had tried to change to 9 hour shifts

19  which was enough time to complete their duties.  Plaintiffs also reported about the billing practices

20  to their supervisors, but were directed to continue the practice, to as the employees characterized it,

21  to essentially "sit down shut up and color."

22      12.    The USAO/DOJ investigation ultimately concluded that during 2011-2013,

23  NORTHROP GRUMMAN had over-billed the USAF over five million dollars in alleged

24  inflated/falsified labor charges in the BACN program.   The USAO/DOJ and NORTHROP

25  GRUMMAN negotiated a multi-million dollar Civil Settlement Agreement ["Civil Settlement

26  Agreement"] where NORTHROP GRUMMAN agreed to cooperate with the USAO/DOJ

27  investigation, to improve their training policies and procedures and to repay the USAF for the over-

28  billings and other financial considerations.  In consideration, the USAO/DOJ agreed not to bring any

POWERS et al v. NORTHRUP GRUMMAN
Pleading                                - 5 -

1 criminal charges against NORTHROP GRUMMAN and NORTHROP GRUMMAN was allowed

2 to continue its BACN project contract with the USAF, inter alia.

3        13.    Also as part of the civil settlement, NORTHROP GRUMMAN agreed to retaliate

4 against the Plaintiffs by disciplining and terminating the Plaintiffs and the other employees who had

5 been involved in the alleged over billing scheme, even though Plaintiffs and other employees had

6 been directed by NORTHROP GRUMMAN supervisors/management to over bill and had

7 complained, objected and reported truthfully to NORTHROP GRUMMAN regarding the over billing

8 scheme. Essentially, what government contractor NORTHRUP GRUMMAN did was retaliate,

9 falsely blame and sacrifice the Plaintiffs/employees for NORTHROP GRUMMAN

10 supervisors/management misconduct, in order to save face and maintain their profitable contract with

11 the USAF.

12        14.    On or about November 1, 2018, on the very day the Civil Settlement Agreement was

13 signed between USAO/DOJ and NORTHROP GRUMMAN, NORTHROP GRUMMAN wrongfully

14 and retaliatorily terminated each of the Plaintiffs' employment, who had complained, objected and

15 reported truthfully to NORTHROP GRUMMAN the over billing scheme directed by NORTHROP

16 GRUMMAN supervisors/management. NORTHROP GRUMMAN, pretextually told Plaintiffs the

17 termination was for alleged misconduct, for alleged over billing the USAF and suggested they were

18 lucky NORTHRUP GRUMMAN defended them and they were not criminally prosecuted. The

19 wrongful termination adversely effected each of their security clearances and caused them each

20 significant monetary damages in the form of lost current and future income, attorney's fees and costs.

21                        **III.  <u>SUMMARY OF FACTS</u>**

22        15.    Plaintiffs are all civilian (some former military) previous employees of NORTHROP

23 GRUMMAN employed by NORTHROP GRUMMAN in San Diego and deployed overseas in the

24 middle east in the BACN program, all in support of the Global Hawk UAV aircraft/BD-700/E-11A

25 aircraft as contracted by the US Air Force. Plaintiffs were assigned to two different site locations,

26 Site 1 and Site 3, and lived both on and off site sometimes commuting to the on site NORTHRUP

27 GRUMMAN/Air Force Sites. While employed by NORTHROP GRUMMAN in the BACN

28 program Plaintiffs earned between $125,000.00 to $185,000.00 per year. In addition to their

salaries/hourly rates, Plaintiffs were offered pay for travel time hotel to work/return, 2-3 times their normal stateside paychecks, deployment of 75% or less with vacation time.  Plaintiffs were directed where to live, what to drive, where to stay, when and where to work and exactly how to bill.

16.    During the first rotation at Site 3, approximately 9/7/2010 to 5/14/2011, there were approximately 20 employees, but only two places where the employees could sit/work. One was called the "Smokehouse" which had 7 desks and just enough room for a printer and some standing room in the front.  The other space was the "PCEL," pronounced "pickle," which was just big enough for 2-3 people. During this time frame, it was not uncommon for there not to be insufficient places for employees to sit, especially during shift pass downs.  Also during this time period, BACN program related work quickly ran out and Plaintiffs and other employees simply sat on site after doing any available work, doing mostly nothing day in and day out.

17.    During this time period, based on the lack of BACN program work, Plaintiffs and other employees recommended to their supervisor that they alter the schedule so employees were not just sitting around doing nothing.  They suggested a three shift rotation of 9 hours per shift with a one hour of overlap for each shift.  Despite the fact there was no work to be done, the employees' recommendation to work a more reasonable schedule was denied and Plaintiffs and other employees were told to flat bill 12 hours shifts and 1.5 hours travel time, period.  Eventually, the aircraft showed up and everybody did whatever they could or needed to do to get the aircraft operational, as they finally had a purpose.

18.    The BACN Site teams were originally modeled after the development teams at NORTHROP GRUMMAN Spectrum Center, San Diego. The teams from a technical side were software, network, and hardware.  On top of that, they had added a Mission Coordinator and payload operators to deal with the day to day mission aspects, flight operations, quality assurance, and logistics. In 2011, the BACN program had 5 aircraft, where they had started with one in 2009.  Once the program added two more BD-700 later named E-11A airplanes in 2010 and the Global Hawks later in that year the program began hiring a lot of people.  However in 2011-2013 at Site 3, there were too many people for the work that was actually required and employees became very defensive and protective over what little work they had to keep them busy.  Plaintiffs and other employees were

POWERS et al v. NORTHRUP GRUMMAN
Pleading                                                   - 7 -

1   initially told they could not read, surf the web, study, or do anything that was not program related.

2   However most of the time in 2011, there were no program related activities to be performed.

3   Plaintiffs and other employees wanted to do the work they were hired to do and bill their time

4   accurately, but were directed to bill 12 hours and 1.5 hours travel time a day every day.  Additionally,

5   Plaintiffs and other employees never received extra tasking or guidance during these normal and

6   sometimes long periods with no program related activity. NORTHROP GRUMMAN maintained a

7   staff consisting of a site manager, hardware engineers, network engineers, software engineers, flight

8   operations, QAs, logistics; 17 plus people at all times.  Plaintiffs and other employees complained

9   to supervisors and HR that site staffing could have been and should have been done by a lighter

10  compliment of employees.

11       19.    During the time period of on or before January, 2011 to at least October 2013,

12  Plaintiffs were directed by NORTHROP GRUMMAN supervisors Usher Barnam, John McCann and

13  Kari Premus to flat bill a minimum 13.5 hrs per day, 12 hours on shift, plus 1.5 hours for commuting

14  and to be on site, 7 days a week, whether there was work to do or not and despite for some time not

15  having any UAV/aircraft at the location.  Later, Plaintiffs were instructed to flat bill 12 hours per

16  day, but were only required to be on site for 8 hours.  Despite objecting to NORTHROP

17  GRUMMAN supervisors that there was not enough work to bill for 12 hours, they were directed to

18  bill the full 12 hours and during a portion of the relevant time were allowed to be off site "on call"

19  for 4 hours of that billed time.  Before, during and after this time frame, Plaintiffs became aware

20  of/received the following relevant evidentiary documents:

21  **See Exhibit 1 Attached and incorporated herein by reference.**

22       20.    During the time period 8/21/2011 to 8/15/2012 at Site 3, after one of the two UAV

23  aircraft being deployed at Site 3 had crashed and was destroyed.  This left Site 3 employees with only

24  one UAV aircraft, a replacement did not arrive until late 2012.  Returning to the point of having only

25  one aircraft to operate out of Site 3, what was already a very light employee work load became a

26  ridiculously light work load.  During this time frame, the USAF would typically fly the BACN

27  aircraft once every third day.  If there was any scheduled or unscheduled maintenance, there would

28  be periods of no operations for a week, sometimes two. During this time frame, site supervisor, John

POWERS et al v. NORTHRUP GRUMMAN              - 8 -
Pleading

McCann, seemed agitated that Plaintiffs and other employees were sitting around the site with nothing to do and he directed employees did not need to be on site if there were no program related activities to accomplish, rather they could leave the site and were essentially "on call." Plaintiffs and other employees were instructed by the Site manager McCann to keep their phone with them and to remain in a state of readiness and be able to return to cover any emerging tasking during one's designated shift. During this time frame, McCann directed Plaintiffs and other employees to charge the "standard day of 13.5 hours and be on call." Plaintiffs and the other employees did as they were directed.

21.     During the time period of 2/19/2013 to 7/8/2013 at Site 3, Plaintiffs received an email from site supervisor Barnham stating that the time charging policy was changing again and that all previous agreements and understandings were superseded by this new agreement. The new policy stated that only time onsite was chargeable. At this point, Site 3 was back to supporting two aircraft. A third BACN Global Hawk was delivered and integrated in late 2012. Again, Plaintiffs and other employees did as they were directed and charged the standard flat 12 hour day, plus 1.5 hrs for travel 13.5 hours total and remained on site. At no time did any of the Plaintiffs believe they were falsely billing or cheating anyone, they were simply complying with the specific billing and performance instructions of their various supervisors.

22.     Plaintiffs are informed and believe that in or about 2016 to 2018, the USAF became aware of these alleged false billing practices directed by NORTHROP GRUMMAN supervisors/management and initiated an investigation by and through the USAO/DOJ. As part of that investigation, Plaintiffs were interviewed by NORTHROP GRUMMAN management and attorneys and Plaintiffs were provided paid for independent counsel to represent them and some to be interviewed by the USAO/DOJ attorneys.   Plaintiffs were told and asked questions by NORTHROP GRUMMAN lawyers including, but not limited to:

- NG Lawyers said that Attorney-Client privilege applied, but Plaintiffs were not their client, NG was;
- Plaintiffs could not discuss anything said in this interview without breaking NGs Attorney/Client privilege;
- Did you work less time than you charged?;
- How often did you charge for time worked that you did not actually work?;
- Did you charge travel time to the contract?;

- Who said you could charge travel time to the contract?;
- Did NG promise you extra pay while deployed OCONUS? Did they mention an actual number or percentage?
- Did Usher Barnum, John McCann or Kari Premus ever tell you to charge time that you did not actually work to the contract?

At all times, Plaintiffs accurately reported to NORTHROP GRUMMAN management/attorneys and the USAO/DOJ attorneys that during the relevant time frame they did flat bill 12-13.5 hours per day, at times they were not required to be site, but only on call and then they were again required to be on site and bill 13.5 hours per day, exactly as they had been directed and instructed by NORTHROP GRUMMAN supervisors//management, particularly Barnham, McCann and Premus. During the investigation, Plaintiffs also accurately reported they complained to their supervisors, that they had tried to change to 9 hour shifts which was enough time to complete their duties and they also reported about the billing directives to their supervisors, but were directed to continue the practice, to essentially "sit down shut up and color."

23.     The USAO/DOJ investigation ultimately concluded that during 2011-2013, NORTHROP GRUMMAN had over-billed the USAF over $5 million dollars in alleged false labor charges in the BACN program. The USAO/DOJ and NORTHROP GRUMMAN negotiated a multi-million dollar Civil Settlement Agreement ["Civil Settlement Agreement"] where NORTHROP GRUMMAN agreed to cooperate with the USAO/DOJ investigation, to improve their training policies and procedures and to repay the USAF for the over-billings and other financial considerations.  In consideration, the USAO/DOJ agreed not to bring any criminal charges against NORTHROP GRUMMAN and NORTHROP GRUMMAN was allowed to continue its BACN project contract with the USAF, inter alia.

24.     Also as part of the civil settlement, NORTHROP GRUMMAN agreed to retaliate against the Plaintiffs by disciplining and terminating the Plaintiffs and the other employees who had been involved in the over billing scheme, even though Plaintiffs and other employees had been directed by NORTHROP GRUMMAN supervisors/management to over bill and had complained, objected and reported truthfully to NORTHROP GRUMMAN the over billing scheme. Essentially, what government contractor NORTHRUP GRUMMAN did was retaliate, falsely blame and sacrifice the Plaintiffs/employees for NORTHROP GRUMMAN supervisors/management misconduct to save

1    face and maintain their profitable contract with the USAF.

2        25.    On or about November 1, 2018, on the very day the civil Settlement Agreement was

3    signed between USAO/DOJ and NORTHROP GRUMMAN, NORTHROP GRUMMAN wrongfully

4    and retaliatorily terminated each of the Plaintiffs' employment, who had complained, objected and

5    reported truthfully to NORTHROP GRUMMAN regarding the over billing scheme directed by

6    NORTHROP GRUMMAN supervisors/management.  NORTHROP GRUMMAN pretextually told

7    Plaintiffs the termination was for alleged misconduct, for over billing the USAF and suggested they

8    were lucky NORTHRUP GRUMMAN defended them and they were not criminally prosecuted.  The

9    wrongful termination adversely effected each of their security clearances and caused them each

10   significant monetary damages in the form of lost current and future income, attorney's fees and costs.

11       26.    Plaintiffs are informed and believe and hereon allege that they were terminated in

12   violation of law/public policy and in retaliation for complaining and reporting accurately to

13   Defendants attorneys and government attorneys about Defendants over billing scheme and then used

14   as sacrificial lambs in Defendant's Civil Settlement with the USAF to allow Defendants to continue

15   their lucrative BACN services contract with the USAF.

16       27.    Defendants' wrongful conduct has caused, and undoubtedly will continue to cause

17   severe economic and emotional damages to Plaintiffs.  Defendants' conduct has also resulted in loss

18   of sleep and anxiety for Plaintiffs, causing further emotional distress and discomfort.

19       28.    At all times relevant herein, Plaintiffs conducted themselves in accordance with all

20   of the policies and procedures of Defendants and as directed by Defendants supervisors/managers

21   and  performed their employment duties in a proper fashion.

22       29.    At all times relevant herein, Defendants were employers within the definition of

23   *Government Code* §12926(c). In addition, Defendants had an affirmative duty to investigate and take

24   all reasonable steps to prevent discriminatory harassment from occurring in the workplace

25   *Government Code* §12940 et seq.

26       30.    Plaintiffs are not barred by the exclusive remedy provision of the workers'

27   compensation law as the exclusive remedy does not bar a suit for emotional distress damages

28   resulting from unlawful discrimination or other misconduct that "exceed(s) the normal risks of the

POWERS et al v. NORTHRUP GRUMMAN                          - 11 -
Pleading:

1   employment relationship." [*Livitsanos v Sup. Ct.* (Continental Culture Specialists, Inc.) (1992) 2 C4th

2   744, 756—emotional distress resulting from employer's defamation and harassment] "The

3   Legislature ... did not intend that an employer be allowed to raise the exclusivity rule for the purpose

4   of deflecting a claim of discriminatory practices." [*Accardi v. Sup. Ct.* (City of Simi Valley) (1993)

5   17 CA4th 341, 352 (disapproved on other grounds in *Richards v. CH2M Hill, Inc.* (2001) 26 C4th

6   798); *Murray v. Oceanside Unified School Dist.* (2000) 79 CA4th 1338, 1362 (abrogated on other

7   grounds *by Hart v. National Mortg. & Land Co.* (1987) 189 CA3d 1420)] A number of cases have

8   adopted this reasoning and held claims for emotional distress caused by workplace discrimination

9   are not preempted by California's workers' compensation laws. [*Fretland v. County of Humboldt*

10  (1999) 69 CA4th 1478, 1492—emotional distress resulting from alleged work-related injury

11  discrimination; *Kovatch v. California Cas. Management Co., Inc.* (1998) 65 CA4th 1256, 1277

12  (disapproved on other grounds in *Aguilar v. Atlantic Richfield Co.* (2001) 25 CA4th 826)—emotional

13  distress resulting from harassment based on sexual orientation; *Cabesuela v. Browning–Ferris*

14  *Industries of California, Inc.* (1998) 68 CA4th 101, 113---emotional distress resulting from wrongful

15  termination in violation of whistle-blower statute; *Murray v. Oceanside Unified School Dist.*, supra,

16  79 CA4th at 1363—emotional distress allegedly resulting from continuing pattern of workplace

17  harassment based on sexual orientation.]

18      31.     Additionally, Plaintiffs' post-termination intentional and negligent emotional distress

19  injuries are precluded from workers' compensation coverage. There is no workers' compensation

20  coverage for emotional distress or psychiatric injury that arises after the termination and solely

21  because of the termination (e.g., worker becomes depressed after being unable to find new

22  employment): "The fact of job termination by an employer, without more, cannot result in liability

23  to the terminated employee by way of a workers' compensation award." [*Bray v WCAB* (1994) 26

24  CA4th 530, 539-540 "To hold otherwise would quickly convert workers' compensation into another

25  form of unemployment insurance."]

26      32.     As a direct and proximate result of the misconduct alleged above, Plaintiffs have/will

27  suffer lost income and benefits in an amount not less than $7,000,000.00, all in an amount to be

28  shown according to proof.  Plaintiffs claim such amount as damages together with prejudgment

POWERS et al v. NORTHRUP GRUMMAN                    - 12 -
Pleading

1  interest pursuant to *Civil Code* §3287 and/or any other provision of law providing for prejudgment

2  interest.

3      33.     As a direct and proximate cause of the wrongful activities alleged above, Plaintiffs

4  have suffered emotional distress directly associated with having to endure retaliation, discrimination

5  and unfairness directed towards Plaintiffs; and/or unjust wrongful termination as a result of the same

6  by Defendants. By this complaint, Plaintiffs do not waive any privacy rights they may have under

7  *Cal. Const.*, Art. I, § 1;  *Evid. Code* §994;  *Evid. Code* §1014.

8                    **FIRST CAUSE OF ACTION**
       **(Wrongful Termination in Violation of Fundamental Public Policies**
9                  **against Defendant and DOES 1-50)**

10     34.     Plaintiffs refer to and incorporate by reference herein each and every allegation

11  contained in paragraphs 1 through 33 above.

12     35.     Plaintiffs allege that: (1) an employer-employee relationship existed; (2) Plaintiffs

13  engaged in a protected activity; (3) the Defendant employer subjected the employee to an adverse

14  employment action; and (4) a causal link existed between the protected activity and the employer's

15  adverse action. *Yanowitz v. L'Oreal USA, Inc.,* 36 Cal. 4th 1028, 1066, 32 Cal. Rptr. 3d 436 (2005);

16  *Mackey v. Department of Corrections*, 105 Cal. App. 4th 945 (2003).  *Tameny v. Atlantic Richfield*

17  *Co.,* 27 Cal.3d 167, 179-180 (1980).  CACI 2430  The harassment, intimidation, discrimination,

18  retaliation, and ultimate constructive wrongful termination against Plaintiffs by Defendant was

19  substantially due to Plaintiffs engaging in legally protected activities, namely accurately reported to

20  NORTHROP GRUMMAN management/attorneys and the USAO/DOJ attorneys that during the

21  relevant time frame they did flat bill 12-13.5 hours per day, as they had been directed and instructed

22  by NORTHROP GRUMMAN supervisors/management.  During the investigation, Plaintiffs also

23  accurately reported they complained to their supervisor, that they had tried to change to 9 hour shifts

24  which was enough time to complete their duties and about the false billing scheme to their

25  supervisors, but were directed to continue the practice, to essentially "sit down shut up and color."

26     36.     Defendant had actual knowledge of the misconduct as well as the pervasive,

27  harassing, intimidating, discriminating, and retaliating environment in which Plaintiffs were forced

28  to work.  Furthermore, Defendant maliciously and intentionally authorized and ratified the acts of

POWERS et al v. NORTHRUP GRUMMAN                     - 13 -
Pleading

1   Plaintiff's supervisors.

2       37.    Defendants' wrongful/retaliatory acts were in violation of California law and were

3   in Violation of Fundamental Public Policy as they are supported by both constitutional and statutory

4   provisions.

5       38.    Defendant violated these public policies by harassing, intimidating, discriminating,

6   and retaliating against Plaintiffs. All of the foregoing are in violation of the public policy of this

7   State, so as to entitle Plaintiffs to sue for the injuries and damages suffered by them as a result

8   thereof.

9       39.    As a proximate result of the misconduct of Defendant, Plaintiffs has suffered and

10   continues to suffer substantial losses in earnings and other employment benefits which they would

11   have received had Defendant not committed such misconduct.

12      **SECOND CAUSE OF ACTION**

13   **(Violation of *California Labor Code* §1102.5 against**
       **Defendant and DOES 1-50)**

14       40.    Plaintiffs refer to and incorporate by reference herein each and every allegation

15   contained in paragraphs 1 through 39 above.

16

17       41.    Pursuant to *California Labor Code* §1102.5(a) an employer, or any person acting on

behalf of the employer, shall not make, adopt, or enforce any rule, regulation, or policy preventing

18   an employee from disclosing information to a government or law enforcement agency, to a person

19   with authority over the employee, or to another employee who has authority to investigate, discover,

20   or correct the violation or noncompliance, if the employee has reasonable cause to believe that the

21   information discloses a violation of state or federal statute, or a violation of or noncompliance with

22   a local, state, or federal rule or regulation, regardless of whether disclosing the information is part

23   of the employee's job duties.

24       42.    Pursuant to *California Labor Code* §1102.5(b) an employer, or any person acting on

25   behalf of the employer, shall not retaliate against an employee for disclosing information, or because

26   the employer believes that the employee disclosed or may disclose information, to a government or

27   law enforcement agency, to a person with authority over the employee or another employee who has

28

1    the authority to investigate, discover, or correct the violation or noncompliance, or for providing

2    information to, or testifying before, any public body conducting an investigation, hearing, or inquiry,

3    if the employee has reasonable cause to believe that the information discloses a violation of state or

4    federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation,

5    regardless of whether disclosing the information is part of the employee's job duties.

6        43.    Pursuant to *California Labor Code* §1102.5(c) an employer may not retaliate against

7    an employee for refusing to participate in an activity that would result in a violation of state or

8    federal statute, or a violation or noncompliance with a state or federal rule or regulation.

9        44.    Pursuant to *California Labor Code* §1102.5(d) An employer, or any person acting on

10   behalf of the employer, shall not retaliate against an employee for having exercised his or her rights

11   under subdivision (a), (b), or (c) in any former employment.

12       45.    Plaintiffs were retaliated and discriminated against and ultimately terminated because

13   they engaged in legally protected activities, namely they accurately reported to NORTHROP

14   GRUMMAN management/attorneys and the USAO/DOJ attorneys that during the relevant time

15   frame they did flat bill 12-13.5 hours per day, as they had been directed and instructed by

16   NORTHROP GRUMMAN supervisors/management.  During the investigation, Plaintiffs also

17   accurately reported they complained to their supervisor, that they had tried to change to 9 hour shifts

18   which was enough time to complete their duties and about the false billing scheme to their

19   supervisors, but were directed to continue the practice, to essentially "sit down shut up and color."

20       46.    As a direct and proximate result of Defendants' violation of *California Labor Code*

21   §1102.5 et seq. through the acts of said Defendants alleged above, Plaintiffs have suffered the

22   injuries and damages alleged herein.

23                    **THIRD CAUSE OF ACTION**
                **(Negligent Hiring, Supervision, or Retention of Employee**
24                **against Defendant and DOES 1-50)**

25       47.    Plaintiffs refer to and incorporate by reference herein each and every allegation

26   contained in paragraphs 1 through 46 above.

27       48.    Defendant hired the employees who became unfit and/or incompetent to perform the

28   work they were hired to do as well as negligently and carelessly supervised and retained Defendants'

POWERS et al v. NORTHRUP GRUMMAN                          - 15 -
Pleading

1   employees so as to proximately cause the injuries and damages alleged herein.

2        49.      Defendant had actual knowledge of the conduct of their management level employees

3   as well as the pervasive discriminatory work environment in which Plaintiffs were forced to work

4   and failed to investigate or prevent the discrimination. Furthermore, Defendant maliciously and

5   intentionally authorized and ratified the acts of their employees.

6        50.      As a direct and proximate result of Defendants' actions Plaintiffs have suffered the

7   injuries and damages alleged herein.

8                            **FOURTH CAUSE OF ACTION**
                    **(Unfair Business Practices against Defendant and DOES 1-50)**
9

10       51.      Plaintiffs refer to and incorporate by reference herein each and every allegation

11  contained in paragraphs 1 through 50 above.

12       52.      The acts of Defendant, as hereinabove alleged, constitute unfair, fraudulent and

13  deceptive business practices under *California Business and Professions Code Section* §17200 et.seq.

14       53.      As a proximate result of Defendants' unfair business practices, Plaintiffs have been

15  deprived of their compensation including wages/commissions. Plaintiffs are entitled to, and hereby

16  seek, restoration of all amounts determined to have been wrongfully acquired by Defendants by

17  reason of said unfair business.

18       54.      In the acts alleged hereinabove, Defendant have engaged in fraudulent and deceptive

19  business practices and otherwise engaged in the wrongful acts and omissions herein alleged.

20  Defendant acted with oppression, fraud, and malice and accordingly an award of exemplary and

21  punitive damages should be assessed against Defendant based upon their relative fault in committing

22  the acts as alleged herein, and made in favor of Plaintiffs as an example and deterrent to Defendant

23  and others not to engage in such predatory practices and other wrongful conduct such as alleged in

24  this complaint.

                             **FIFTH CAUSE OF ACTION**
25                  **(Breach Of Fiduciary Duty against Defendant and DOES 1-50)**

26       55.      Plaintiffs refer to and incorporate by reference herein each and every allegation

27  contained in paragraphs 1 through 54 above.

28       56.      Plaintiffs had built a relationship of trust and confidence such that Plaintiffs relied

POWERS et al v. NORTHRUP GRUMMAN                    - 16 -
Pleading

1   on Defendant to treat them fairly.  Plaintiffs reasonably relied on the fact that Defendant would carry

2   out their agreements in a professional and honest manner in furtherance of the best interests of

3   Plaintiffs.  As a result of the claims and representations of Defendant as aforesaid, Plaintiffs were

4   induced to place trust and confidence in Defendant and thereby entered into a fiduciary relationship

5   with the Defendant.  The acts and omissions of Defendant as alleged above breached said fiduciary

6   duty owed to Plaintiffs.

7         57.      Defendant, and each of them, knowingly aided, encouraged, cooperated and/or

8   participated in and substantially assisted the other Defendant in the breach of their fiduciary duties.

9         58.      As a direct and proximate result of Defendants' breach of their fiduciary duties of

10   care, good faith, honesty and loyalty,  Plaintiffs have suffered the injuries and damages alleged

11   above.

12         59.       The acts and omissions of Defendant were undertaken with fraud, oppression or

13   malice, such as to justify an award of punitive damages in favor of Plaintiffs in an amount to be

14   shown according to proof.

15                    **SIXTH CAUSE OF ACTION**
         **(Breach of Implied Covenant of Good Faith/Fair Dealing**
16                   **against Defendant and DOES 1-50)**

17         60.      Plaintiffs refer to and incorporate by reference herein each and every allegation set

18   forth in paragraphs 1 through 59 above.

19         61.      The Employment Agreement between Defendant and Plaintiffs had an implied-in-law

20   covenant of good faith and fair dealing. The covenant of good faith and fair dealing is implied in

21   every employment contract.  Defendant covenanted to give full cooperation to the Plaintiffs in their

22   performance under the Employment Agreement, and that Defendant would refrain from any act

23   which would prevent or impede any of the conditions of the employment agreement from being

24   performed.

25         62.      Plaintiffs reasonably relied on the implied promise that Defendant would treat them

26   fairly and not in violation of the law.

27         63.      Plaintiffs performed all the duties and conditions of the Employment Agreement and

28   Defendant knew that Plaintiffs had fulfilled all their duties and obligations under the contract.

POWERS et al v. NORTHRUP GRUMMAN            - 17 -
Pleading

64.     Defendant breached the implied covenant of good faith and fair dealing under the Employment Agreement by engaging in the misconduct as alleged herein.  Defendants' motives were in bad faith/retaliatory in nature and extraneous to the employment relationship and were intended to deprive Plaintiffs of the benefits thereof.

65.     As a proximate result of Defendants' breach of the implied covenant of good faith and fair dealing, Plaintiffs have suffered, and continues to suffer, losses in earnings and other employment benefits, to their damage in an amount to be established at trial.

## SEVENTH CAUSE OF ACTION
### (Breach of Written Employer Policies against Defendant and DOES 1-50)

66.     Plaintiffs refer to and incorporate by reference herein each and every allegation contained in paragraphs 1 through 65 above.

67.     Defendant had in effect at the time of Plaintiffs' hiring and termination certain written Policies ["Policies"].  Pursuant to the implied and express terms of the Policies, Plaintiffs were afforded procedural rights protecting Plaintiffs from arbitrary/discriminatory/retaliatory mistreatment and termination.

68.     The express and implied terms of Plaintiffs' Employment Agreement and the Policies set forth the avowed policy of Defendant to treat its employees fairly and in an honest, rational manner and to refrain from discriminatory misconduct and retaliation. Plaintiffs were protected from the type of discrimination, retaliation and termination which has been alleged herein.

69.     The substantive reason for Plaintiffs's mistreatment, and the procedures utilized by Defendant in terminating Plaintiffs, violated the written Policies of Defendant, which, if adhered to, would have allowed Plaintiffs to remain an employee of Defendant. Defendants' violation was a substantial factor in the causation of the injuries and damages alleged herein.

## EIGHTH CAUSE OF ACTION
### (Intentional Infliction of Emotional Distress against Defendant and DOES 1-50)

70.     Plaintiffs refer to and incorporate by reference herein each and every allegation contained in paragraphs 1 through 69 above.

///

POWERS et al v. NORTHRUP GRUMMAN
Pleading                                                - 18 -

71.     On the dates set forth above, Plaintiffs became aware they was being harassed, intimidated, discriminated and retaliated against by Defendant. The wrongful conduct was ratified and approved by Defendant.

72.     Defendant intentionally, and with a malicious motive, engaged in conduct that was calculated to cause Plaintiffs to suffer humiliation, mental anguish and emotional distress. This extreme and outrageous conduct by Defendant included harassing, intimidating, discriminating and retaliating against Plaintiffs without good cause and falsely justifying such actions. Defendants' conduct in confirming and ratifying the wrongful conduct of its supervisors and managers was done with the knowledge that it would cause Plaintiffs severe emotional distress and hardship and with a wanton and reckless disregard of the consequences to Plaintiffs.

73.     Defendants' wrongful conduct against Plaintiffs was extreme and outrageous in that at all times they knew they were harassing, intimidating, discriminating and retaliating against employees who had worked with extraordinary commitment while in the employ of Defendant. Defendant knew that such arbitrary, intentional and wrongful conduct on the part of Defendant without good cause and under false pretenses would cause Plaintiffs severe emotional distress and hardship, leave them without a job, or a career to which they had expended many years of service in constructing, or a means to support themselves and their families.

74.     As a proximate result of Defendants' intentional conduct, Plaintiffs were injured in their health, strength and activity, sustaining substantial shock and injury to their nervous system and person.  All of the injuries have caused and continue to cause Plaintiffs great mental distress, pain and suffering.

75.     Plaintiffs have suffered loss of reputation, income, shame, ridicule, and mortification, all to their general damage in an amount to be proven at the time of trial.

## NINTH CAUSE OF ACTION
### (Negligent Infliction of Emotional Distress against Defendants and DOES 1-50)

76.     Plaintiffs refer to and incorporate by reference herein each and every allegation contained in paragraphs 1 through 75 above.

///

POWERS et al v. NORTHRUP GRUMMAN
Pleading

- 19 -

77.     On the dates set forth above, Plaintiffs became aware that they were being harassed, intimidated, discriminated and retaliated against by Defendant.  This wrongful conduct was ratified and approved by Defendant.

78.     Defendant negligently engaged in the conduct of harassing, intimidating, discriminating and retaliating against Plaintiffs without good cause and by falsely justifying such wrongful conduct even though Defendant knew, or should have known, that such wrongful conduct would cause Plaintiffs to suffer humiliation, mental anguish, and emotional distress.

79.     As a proximate result of Defendants' negligent conduct, Plaintiffs were injured in their health, strength and activity, sustaining substantial shock and injury to their nervous system and person.  All of the injuries have caused and continue to cause Plaintiffs great mental distress, pain and suffering.

**WHEREFORE, PLAINTIFFS PRAYS FOR JUDGMENT AS FOLLOWS:**

1.     For an award against Defendant of actual, consequential and incidental losses, including, but not limited to loss of income and benefits in an amount to be shown according to proof, together with prejudgment interest pursuant to *Civil Code* §§ 3287 and/or 3288.

2.     For an award against Defendant of general damages in an amount to be shown according to proof.

3.     For exemplary and punitive damages for Defendants' oppression and malice, in an amount commensurate with Defendants' ability to pay, according to proof at trial.

4.     For costs of suit and attorneys' fees under the *California Labor Code* §§1102.5, 2699 and *California Code of Civil Procedure* §1021.5, as the action concerns the enforcement of an important right affecting the public interest.

5.     For such other and further damages as the court deems just and proper.

JURY TRIAL DEMANDED

Plaintiffs demands trial of all issues by jury.

Dated: _6/4/20_

CURRAN & CURRAN LAW

By: _____

MICHAEL D. CURRAN, Esq./ATP/CFII
Attorney for Plaintiffs

POWERS et al v. NORTHRUP GRUMMAN
Pleading

- 20 -

EXHIBIT  "1"

| 1/29/2005 | C-JP-721 | Jamie Powers Employment Agreement |
|---|---|---|
| 12/4/2006 | C-JP-733 | Letter of Appreciation to Jamie Powers |
| 8/10/2007 | C-JP-717 | Timely Award Plan Notification to Jamie Powers |
| 4/2/2010 | C-JP-35821 | 24/7 Team Rotation Schedule (12 hour shifts) |
| 9/7/2010 | C-JP-769 | Jamie Powers International Assignment Agreement |
| 12/7/2010 | C-JP-33069 | Email from Michael Carscellen suggesting that they move to 10 hours shifts to avoid 12 hour days |
| 1/10/2011 | C-JP-34968 | Usher email directing everyone to return to 12 hour shifts |
| 3/1/2011 | C-JP-777 | Jamie Powers Performance Review – positive |
| 6/1/2011 | C-DM-1 | Email from Usher indicating that NG does not define "on call" in its labor policies but that he considered the employees to be telecommuting when he told them they were on call |
| 6/28/2011 | C-DM-3 | Email from Usher authorizing 12 hours per day, plus travel time |
| 1/3/2012 | C-JP-794 | Jamie Powers International Assignment Agreement with compensation guidelines indicating he is paid salary, not hourly |
| 3/4/2012 | C-JP-15214 | Powers advises Usher that he is billing 16 hours due to early and late launches |
| 3/8/2012 | C-JP-6686 | Email from Robert Andrews congratulating BACN for logging 50,000 hours and sending them candy |
| 3/12/2012 | C-JP-945 | Outlines Extended Work Week overtime terms – employees receive overtime after the 80th hour per pay period |
| 3/25/2012 | C-JP-1092 | BACN organizational chart |
| 4/2/2012 | C-JP-7305 | Announcement of award of Air Force BACN contract |
| 4/16/2012 | C-JP-74 | Email from Kari Premus instructing employees that if they are billing for off-site time, they must be on call and available and that employees can rotate from day to night to take advantage of the higher premium |
| 4/29/2012 | C-JP-88 | Email from Kari Premus advising that everyone can claim the 10% premium associated with the night shift |
| 5/1/2012 | C-JP-98 | Email from Kari Premus instructing all to make no more shift changes |
| 5/3/2012 | C-JP-99 | Email from Usher advising that time in excess of 13.5 hours must be approved by management in advance |
| 5/16/2012 | C-JP-4 C-JP-10 | Email from Usher advising that employees can only charge for hours actually worked |
| 6/1/2012 | C-DM-5 | Email from Russell Baker copied to McCann authorizing Doug Miller's time of 16 and 13.5 hours |
| 6/21/2012 | C-JP-579 | Email from Usher that telecommuting is not allowed when the aircraft is en route, but that standard shift rotations will continue |
| 7/2/2012 | C-JP-627 | NG Time Charging Manual – does not forbid on call time, or travel time except from to and from main residence |
| 7/12/2012 | C-JP-9 | Email from Usher advising all to bill in excess of 13.5 hours |
| 7/12/2012 | C-JP-122 | Email between Evan Williams and Jeff Kout where Kout advises of a 12:30 arrival and Williams approves billing 13.5+ hours.  Contains the word today$ |
| 7/14/2012 | C-JP-247 | Email from Usher advising that no alcohol can be consumed with billing time, but that they can bill if they are available on call |
| 7/14/2012 | C-JP-244 | Usher recalled the email about alcohol consumption |
| 8/14/2012 | C-JP-283 | Email from Usher "clarifying" the remote work policy to mean that work shifts are a minimum of 12 hours, with 4 hours maximum remotely |
| 11/18/2012 | C-DM-6 | Email from James Sullivan providing that employees must work 12 hours a day 7 days a week, partially remote |



1

| 1/16/2013 | C-JP-105 | Email from Usher instructing employees not to charge for "waiting" time |
|---|---|---|
| 1/31/2013 | C-JP-300 | Email from Ron Ly complaining about Sullivan's scrutiny of his time records even though he is only billing 13.5 hours as allowed |
| 2/19/2013 | C-JP-302 | Email from John McCann and James Sullivan advising that travel time may not be billed and that billing can only be for time worked "regarded of prior understandings" |
| 2/19/2013 | C-JP-58 | Email from Steve Zell "clarifying" NG policy regarding billing for "on call" time |
| 2/19/2013 | C-JP-32787 | Email from Steve Zell reporting that a series of meetings have been held to resolve the issues of travel time and on-call time and enclosing the revised time policies |
| 2/20/2013 | C-JP-33106 | Email from Ron Lye to Powers re: big mandatory meeting forbidding off-site work |
| 3/8/2013 | C-JP-270 | Email from Usher providing guidance on time charging that is "still fairly new" |
| 3/8/2013 | C-JP-584 | New time-charging policy banning on call billing and travel time |
| 3/12/2013 | C-JP-62462 | Email outlining the new time-charging procedure with a hint that a standard daily billing of 12 hours...will look "suspicious" |
| 3/14/2013 | C-JP-290647 | Powers performance review finding that he displays high ethics, has value to the team and has exceeded expectations |
| 3/17/2013 | C-JP-517 | Email from Usher that NG is now getting the fully "old school" treatment but that it was very hard to rein them in |
| 3/20/2013 | C-JP-669 | PPT setting forth the required "on site" hours |
| 3/20/2013 | C-JP-689 | Email from Mike Kenworthy instructing that any time over 8.5 hours per day must be pre-approved |
| 3/22/2013 | C-JP-280255 | Email re: time charging and authorized hotel work and pre-authorized off-site activities |
| 3/31/2013 | C-JP-137702 | JP forwarding email re: time-charging guidance |
| 4/19/2013 | C-JP-667 | Email from Sullivan indicating that offsite work can be authorized but that only time actually worked can be charged |
| 5/3/2013 | C-JP-280281 | Email re: approved activities |
| 5/17/2013 | C-JP-2800299 | Email re: pre-approved activities |
| 5/30/2013 | C-JP-646172 | Mulhy email to Powers re: AESE program |
| 5/30/2013 | C-JP-274807 | Power emails to Legal re: time charges (dated in metadata) |
| 6/14/2013 | C-JP-250027 | RV email re: shift schedule and guidance-work charged requires email and offsite guidance |
| 6/29/2013 | C-JP-251892 | JS email re: shift schedule and pre-approved activities |
| 7/1/2013 | C-JP-671316 | Email to Powers to ensure that he is onsite on time per his shift because any deviation must be coordinated |
| 7/8/2013 | C-JP-215 | Email from Jim Sullivan re: due to the new time charging policies we will be revising the shift turnover procedures to maximize communication |
| 7/9/2013 | C-JP-257 | New time charging procedure manual |
| 7/23/2013 | C-JP-56 | Messaging between Powers and John W. that this "new" requirement to be onsite for 12.5 hours per day, is "getting old fast" |
| 7/31/2013 | C-JP-321 | Messaging between David Perham and Powers confirming that overseas time charging is now "back to old school" requiring onsite for entire shift |
| | | |
| 9/9/2013 | C-JP-101584 | Chat referencing the investigation |
| 10/21/2013 | C-JP-407 | Email from Powers challenging complaints about his time-keeping |

| | | |
|---|---|---|
| | | because he billed for training that he conducted at the hotel |
| 10/21/2013 | C-JP-114025 | Powers email re: training records and off-site training |
| 10/31/2013 | C-JP-32899 C-JP-33247 C-JP-33303 | Email from Sullivan to Diane Muhly enclosing examples of BACN work done in excess of 12 hours |
| 10/31/2013 | C-JP-265818 | Emails re: time-charging, Muhly requesting more documents from Sullivan |
| 10/31/2013 | C-JP-247646 | Chat between Powers and Douglas discussion calling people back for interviews, indicates Powers was falsifying hours |
| 11/5/2013 | C-JP-495 | Email from Jim Sullivan explaining that the "new" time guidelines were implemented on 2/23/2013 |
| 11/6/2013 | C-DM-26 | Warning issued to Doug Miller about billing time not worked by Bruce Hagaman |
| 2/24/2014 | C-JP-504 | Final Written Wanting to Jaime Powers about alleged inappropriately charged time to the BACN project with handwritten disagreement |
| 9/28/2018 | C-JP-56667 | NG Time-Keeping and Labor Reporting Directive |
| 10/31/2018 | C-JP-56674 | US DOJ letter re: settling BACN case in exchange for payment and promises including termination of employees |
| 11/2/2018 | C-DM-77 | Doug Miller terminated for alleged overbilling the USAF |
| | | |
| Undated | C-JP-687 | Memo advising the travel time cannot be billed and that remote time can be billed if work is actually being done but not for time on-call |
| Undated | C-JP-691 | Page from Ethics and Compliance manual requiring accurate time records |
| Undated | C-DM-25 | Memo from "Jim" to "clarify" time policies. 12 hours per day, seven days a week but all time must be on-site and elimination of paid travel time |
| Undated | C-JP-691 | Time and Labor Charging Policy |
| Undated | C-JP-56649 | International Travel Agreement: Elevated Threat Location (Afghanistan) -- Contains description of pay structure |
| Undated | C-JP-56542 | International Travel Agreement (Abu Dhabi) – Contains description of pay structure |
| Undated | C-JP-32480 | Tech Time On-Site Core and Off-Site Flexible hours |
| Undated | C-JP-32788 | Instructions about what Zell's email about the new time-charging policy should be |

3

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Karen R. Frostrom (SBN 207044)<br>Thorsnes Bartolotta McGuire LLP<br>2550 Fifth Avenue, Suite 1100, San Diego, CA 92103 | **ELECTRONICALLY FILED** |

TELEPHONE NO.: (619) 236-9363    FAX NO. *(Optional):* (619) 236-9653
ATTORNEY FOR *(Name):* Plaintiffs, Jamie Powers, et al.

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO
STREET ADDRESS: 330 West Broadway
MAILING ADDRESS: 330 West Broadway
CITY AND ZIP CODE: San Diego, CA 92103
BRANCH NAME: Hall of Justice

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego

**06/12/2020** at 01:54:34 PM

Clerk of the Superior Court
By Eddie De La Torre, Deputy Clerk

CASE NAME:
Jamie Powers, et al. v. Northrop Grumman Corporation, et al.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| [x] Unlimited   [ ] Limited<br>(Amount    (Amount<br>demanded   demanded is<br>exceeds $25,000)   $25,000) | [ ] Counter   [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | 37-2020-00020015-CU-WT-CTL |
| | | JUDGE: Judge Gregory W Pollack<br>DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

| Auto Tort | Contract | Provisionally Complex Civil Litigation |
|---|---|---|
| [ ] Auto (22) | [ ] Breach of contract/warranty (06) | **(Cal. Rules of Court, rules 3.400–3.403)** |
| [ ] Uninsured motorist (46) | [ ] Rule 3.740 collections (09) | [ ] Antitrust/Trade regulation (03) |
| **Other PI/PD/WD (Personal Injury/Property** | [ ] Other collections (09) | [ ] Construction defect (10) |
| **Damage/Wrongful Death) Tort** | [ ] Insurance coverage (18) | [ ] Mass tort (40) |
| [ ] Asbestos (04) | [ ] Other contract (37) | [ ] Securities litigation (28) |
| [ ] Product liability (24) | **Real Property** | [ ] Environmental/Toxic tort (30) |
| [ ] Medical malpractice (45) | [ ] Eminent domain/Inverse | [ ] Insurance coverage claims arising from the |
| [ ] Other PI/PD/WD (23) | condemnation (14) | above listed provisionally complex case |
| **Non-PI/PD/WD (Other) Tort** | [ ] Wrongful eviction (33) | types (41) |
| [ ] Business tort/unfair business practice (07) | [ ] Other real property (26) | **Enforcement of Judgment** |
| [ ] Civil rights (08) | **Unlawful Detainer** | [ ] Enforcement of judgment (20) |
| [ ] Defamation (13) | [ ] Commercial (31) | **Miscellaneous Civil Complaint** |
| [ ] Fraud (16) | [ ] Residential (32) | [ ] RICO (27) |
| [ ] Intellectual property (19) | [ ] Drugs (38) | [ ] Other complaint *(not specified above)* (42) |
| [ ] Professional negligence (25) | **Judicial Review** | **Miscellaneous Civil Petition** |
| [ ] Other non-PI/PD/WD tort (35) | [ ] Asset forfeiture (05) | [ ] Partnership and corporate governance (21) |
| **Employment** | [ ] Petition re: arbitration award (11) | [ ] Other petition *(not specified above)* (43) |
| [x] Wrongful termination (36) | [ ] Writ of mandate (02) | |
| [ ] Other employment (15) | [ ] Other judicial review (39) | |

2. This case [ ] is [x] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties    d. [ ] Large number of witnesses
   b. [ ] Extensive motion practice raising difficult or novel    e. [ ] Coordination with related actions pending in one or more
      issues that will be time-consuming to resolve       courts in other counties, states, or countries, or in a federal
   c. [ ] Substantial amount of documentary evidence       court
      f. [ ] Substantial postjudgment judicial supervision
3. Remedies sought *(check all that apply):* a. [x] monetary   b. [ ] nonmonetary; declaratory or injunctive relief   c. [x] punitive
4. Number of causes of action *(specify):* 9
5. This case [ ] is [x] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*
Date: June 4, 2020
Karen R. Frostrom
_____      ▶
(TYPE OR PRINT NAME)                     (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>www.courts.ca.gov |
|---|---|---|

**CM-010**

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
    Asbestos Property Damage
    Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
    Medical Malpractice– Physicians & Surgeons
    Other Professional Health Care Malpractice
Other PI/PD/WD (23)
    Premises Liability (e.g., slip and fall)
    Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
    Intentional Infliction of Emotional Distress
    Negligent Infliction of Emotional Distress
    Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
    Legal Malpractice
    Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
    Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
    Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
    Negligent Breach of Contract/ Warranty
    Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
    Collection Case–Seller Plaintiff
    Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
    Auto Subrogation
    Other Coverage
Other Contract (37)
    Contractual Fraud
    Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
    Writ of Possession of Real Property
    Mortgage Foreclosure
    Quiet Title
    Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
    Writ–Administrative Mandamus
    Writ–Mandamus on Limited Court Case Matter
    Writ–Other Limited Court Case Review
Other Judicial Review (39)
    Review of Health Officer Order
    Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
    Abstract of Judgment (Out of County)
    Confession of Judgment *(non-domestic relations)*
    Sister State Judgment
    Administrative Agency Award *(not unpaid taxes)*
    Petition/Certification of Entry of Judgment on Unpaid Taxes
    Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
    Declaratory Relief Only
    Injunctive Relief Only *(non-harassment)*
    Mechanics Lien
    Other Commercial Complaint Case *(non-tort/non-complex)*
    Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
    Civil Harassment
    Workplace Violence
    Elder/Dependent Adult Abuse
    Election Contest
    Petition for Name Change
    Petition for Relief From Late Claim
    Other Civil Petition

Exhibit 1, Page 32

| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO** | |
|---|---|
| STREET ADDRESS: | 330 W Broadway |
| MAILING ADDRESS: | 330 W Broadway |
| CITY AND ZIP CODE: | San Diego, CA 92101-3827 |
| BRANCH NAME: | Central |
| TELEPHONE NUMBER: | (619) 450-7071 |

| PLAINTIFF(S) / PETITIONER(S):   Jamie Powers et.al. |
|---|

| DEFENDANT(S) / RESPONDENT(S):   Northrop Grumman Corporation |
|---|

| POWERS VS NORTHROP GRUMMAN CORPORATION [IMAGED] |
|---|

| **NOTICE OF CASE ASSIGNMENT** **and CASE MANAGEMENT CONFERENCE** | CASE NUMBER: 37-2020-00020015-CU-WT-CTL |
|---|---|

## CASE ASSIGNED FOR ALL PURPOSES TO:

Judge:  Gregory W Pollack                                           Department: C-71

**COMPLAINT/PETITION FILED:** 06/12/2020

| **TYPE OF HEARING SCHEDULED** | **DATE** | **TIME** | **DEPT** | **JUDGE** |
|---|---|---|---|---|
| Civil Case Management Conference | 01/22/2021 | 01:30 pm | C-71 | Gregory W Pollack |

Due to the COVID-19 pandemic, all hearings will be conducted remotely until further notice. Absent an order of the court, personal appearances at the hearing will not be allowed. For information on arranging telephonic or video appearances, contact CourtCall at (888)882-6878, or at www.courtcall.com. Please make arrangements with CourtCall as soon as possible.

A case management statement must be completed by counsel for all parties or self-represented litigants and timely filed with the court at least 15 days prior to the initial case management conference. (San Diego Local Rules, Division II, CRC Rule 3.725).

All counsel of record or parties in pro per shall appear at the Case Management Conference, be familiar with the case, and be fully prepared to participate effectively in the hearing, including discussions of ADR* options.

IT IS THE DUTY OF EACH PLAINTIFF (AND CROSS-COMPLAINANT) TO SERVE A COPY OF THIS NOTICE WITH THE COMPLAINT (AND CROSS-COMPLAINT), THE ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION FORM (SDSC FORM #CIV-730), A STIPULATION TO USE ALTERNATIVE DISPUTE RESOLUTION (ADR) (SDSC FORM #CIV-359), AND OTHER DOCUMENTS AS SET OUT IN SDSC LOCAL RULE 2.1.5.

ALL COUNSEL WILL BE EXPECTED TO BE FAMILIAR WITH SUPERIOR COURT RULES WHICH HAVE BEEN PUBLISHED AS DIVISION II, AND WILL BE STRICTLY ENFORCED.

TIME STANDARDS:  The following timeframes apply to general civil cases and must be adhered to unless you have requested and been granted an extension of time.  General civil cases consist of all civil cases except: small claims proceedings, civil petitions, unlawful detainer proceedings, probate, guardianship, conservatorship, juvenile, parking citation appeals, and family law proceedings.

COMPLAINTS:  Complaints and all other documents listed in SDSC Local Rule 2.1.5 must be served on all named defendants.

DEFENDANT'S APPEARANCE:  Defendant must generally appear within 30 days of service of the complaint.  (Plaintiff may stipulate to no more than 15 day extension which must be in writing and filed with the Court.) (SDSC Local Rule 2.1.6)

JURY FEES:  In order to preserve the right to a jury trial, one party for each side demanding a jury trial shall pay an advance jury fee in the amount of one hundred fifty dollars ($150) on or before the date scheduled for the initial case management conference in the action.

COURT REPORTERS: Court reporters are not provided by the Court in Civil cases. See policy regarding normal availability and unavailability of official court reporters at www.sdcourt.ca.gov.

*ALTERNATIVE DISPUTE RESOLUTION (ADR):  THE COURT ENCOURAGES YOU TO CONSIDER UTILIZING VARIOUS ALTERNATIVES TO TRIAL, INCLUDING MEDIATION AND ARBITRATION, PRIOR TO THE CASE MANAGEMENT CONFERENCE. PARTIES MAY FILE THE ATTACHED STIPULATION TO USE ALTERNATIVE DISPUTE RESOLUTION (SDSC FORM #CIV-359).



## Superior Court of California
## County of San Diego

# NOTICE OF ELIGIBILITY TO eFILE
# AND ASSIGNMENT TO IMAGING DEPARTMENT

**This case is eligible for eFiling.  Should you prefer to electronically file documents, refer to General Order in re procedures regarding electronically imaged court records, electronic filing, and access to electronic court records in civil and probate cases for rules and procedures or contact the Court's eFiling vendor at www.onelegal.com for information.**

**This case has been assigned to an Imaging Department and original documents attached to pleadings filed with the court will be imaged and destroyed.  Original documents should not be filed with pleadings.  If necessary, they should be lodged with the court under California Rules of Court, rule 3.1302(b).**

On August 1, 2011 the San Diego Superior Court began the Electronic Filing and Imaging Pilot Program ("Program").  As of August 1, 2011 in all new cases assigned to an Imaging Department all filings will be imaged electronically and the electronic version of the document will be the official court file.  The official court file will be electronic and accessible at one of the kiosks located in the Civil Business Office and on the Internet through the court's website.

You should be aware that the electronic copy of the filed document(s) will be the official court record pursuant to Government Code section 68150.  The paper filing will be imaged and held for 30 days.  After that time it will be destroyed and recycled.  **Thus, you should not attach any original documents to pleadings filed with the San Diego Superior Court. Original documents filed with the court will be imaged and destroyed except those documents specified in California Rules of Court, rule 3.1806.**  Any original documents necessary for a motion hearing or trial shall be lodged in advance of the hearing pursuant to California Rules of Court, rule 3.1302(b).

It is the duty of each plaintiff, cross-complainant or petitioner to serve a copy of this notice with the complaint, cross-complaint or petition on all parties in the action.

On all pleadings filed after the initial case originating filing, all parties must, to the extent it is feasible to do so, place the words **"IMAGED FILE"** in all caps immediately under the title of the pleading on all subsequent pleadings filed in the action.



**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**

**ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION**

CASE NUMBER: 37-2020-00020015-CU-WT-CTL       CASE TITLE: Powers vs Northrop Grumman Corporation [IMAGED]

<u>**NOTICE**</u>**: All plaintiffs/cross-complainants in a general civil case are required to serve a copy of the following three forms on each defendant/cross-defendant, together with the complaint/cross-complaint:**
> **(1) this Alternative Dispute Resolution (ADR) Information form (SDSC form #CIV-730),**
> **(2) the Stipulation to Use Alternative Dispute Resolution (ADR) form (SDSC form #CIV-359), *and***
> **(3) the Notice of Case Assignment form (SDSC form #CIV-721).**

Most civil disputes are resolved without filing a lawsuit, and most civil lawsuits are resolved without a trial. The courts, community organizations, and private providers offer a variety of Alternative Dispute Resolution (ADR) processes to help people resolve disputes without a trial. The San Diego Superior Court expects that litigants will utilize some form of ADR as a mechanism for case settlement before trial, and it may be beneficial to do this early in the case.

Below is some information about the potential advantages and disadvantages of ADR, the most common types of ADR, and how to find a local ADR program or neutral. A form for agreeing to use ADR is attached (SDSC form #CIV-359).

<u>**Potential Advantages and Disadvantages of ADR**</u>
ADR may have a variety of advantages or disadvantages over a trial, depending on the type of ADR process used and the particular case:

| **Potential Advantages** | **Potential Disadvantages** |
|---|---|
| • Saves time | • May take more time and money if ADR does not resolve the dispute |
| • Saves money | • Procedures to learn about the other side's case (discovery), jury trial, appeal, and other court protections may be limited or unavailable |
| • Gives parties more control over the dispute resolution process and outcome | |
| • Preserves or improves relationships | |

<u>**Most Common Types of ADR**</u>
You can read more information about these ADR processes and watch videos that demonstrate them on the court's ADR webpage at http://www.sdcourt.ca.gov/adr.

**Mediation:**  A neutral person called a "mediator" helps the parties communicate in an effective and constructive manner so they can try to settle their dispute. The mediator does not decide the outcome, but helps the parties to do so. Mediation is usually confidential, and may be particularly useful when parties want or need to have an ongoing relationship, such as in disputes between family members, neighbors, co-workers, or business partners, or when parties want to discuss non-legal concerns or creative resolutions that could not be ordered at a trial.

**Settlement Conference:**  A judge or another neutral person called a "settlement officer" helps the parties to understand the strengths and weaknesses of their case and to discuss settlement. The judge or settlement officer does not make a decision in the case but helps the parties to negotiate a settlement. Settlement conferences may be particularly helpful when the parties have very different ideas about the likely outcome of a trial and would like an experienced neutral to help guide them toward a resolution.

**Arbitration:**  A neutral person called an "arbitrator" considers arguments and evidence presented by each side and then decides the outcome of the dispute.  Arbitration is less formal than a trial, and the rules of evidence are usually relaxed. If the parties agree to binding arbitration, they waive their right to a trial and agree to accept the arbitrator's decision as final. With nonbinding arbitration, any party may reject the arbitrator's decision and request a trial. Arbitration may be appropriate when the parties want another person to decide the outcome of their dispute but would like to avoid the formality, time, and expense of a trial.

Exhibit 1, Page 35

**Other ADR Processes:**  There are several other types of ADR which are not offered through the court but which may be obtained privately, including neutral evaluation, conciliation, fact finding, mini-trials, and summary jury trials. Sometimes parties will try a combination of ADR processes. The important thing is to try to find the type or types of ADR that are most likely to resolve your dispute.  Be sure to learn about the rules of any ADR program and the qualifications of any neutral you are considering, and about their fees.

## Local ADR Programs for Civil Cases

**Mediation:**  The San Diego Superior Court maintains a Civil Mediation Panel of approved mediators who have met certain minimum qualifications and have agreed to charge $150 per hour for each of the first two (2) hours of mediation and their regular hourly rate thereafter in court-referred mediations.

On-line mediator search and selection:  Go to the court's ADR webpage at www.sdcourt.ca.gov/adr and click on the "Mediator Search" to review individual mediator profiles containing detailed information about each mediator including their dispute resolution training, relevant experience, ADR specialty, education and employment history, mediation style, and fees and to submit an on-line Mediator Selection Form (SDSC form #CIV-005).  The Civil Mediation Panel List, the Available Mediator List, individual Mediator Profiles, and Mediator Selection Form (CIV-005) can also be printed from the court's ADR webpage and are available at the Mediation Program Office or Civil Business Office at each court location.

**Settlement Conference:**  The judge may order your case to a mandatory settlement conference, or voluntary settlement conferences may be requested from the court if the parties certify that: (1) settlement negotiations between the parties have been pursued, demands and offers have been tendered in good faith, and resolution has failed; (2) a judicially supervised settlement conference presents a substantial opportunity for settlement; and (3) the case has developed to a point where all parties are legally and factually prepared to present the issues for settlement consideration and further discovery for settlement purposes is not required. Refer to SDSC Local Rule 2.2.1 for more information. To schedule a settlement conference, contact the department to which your case is assigned.

**Arbitration:**  The San Diego Superior Court maintains a panel of approved judicial arbitrators who have practiced law for a minimum of five years and who have a certain amount of trial and/or arbitration experience.  Refer to SDSC Local Rules Division II, Chapter III and Code Civ. Proc. § 1141.10 et seq or contact the Arbitration Program Office at (619) 450-7300 for more information.

More information about court-connected ADR: Visit the court's ADR webpage at www.sdcourt.ca.gov/adr or contact the court's Mediation/Arbitration Office at (619) 450-7300.

**Dispute Resolution Programs Act (DRPA) funded ADR Programs:**  The following community dispute resolution programs are funded under DRPA (Bus. and Prof. Code §§ 465 et seq.):
- In Central, East, and South San Diego County, contact the National Conflict Resolution Center (NCRC) at www.ncrconline.com or (619) 238-2400.
- In North San Diego County, contact North County Lifeline, Inc. at www.nclifeline.org or (760) 726-4900.

**Private ADR:**  To find a private ADR program or neutral, search the Internet, your local telephone or business directory, or legal newspaper for dispute resolution, mediation, settlement, or arbitration services.

## Legal Representation and Advice

To participate effectively in ADR, it is generally important to understand your legal rights and responsibilities and the likely outcomes if you went to trial. ADR neutrals are not allowed to represent or to give legal advice to the participants in the ADR process. If you do not already have an attorney, the California State Bar or your local County Bar Association can assist you in finding an attorney. Information about obtaining free and low cost legal assistance is also available on the California courts website at *www.courtinfo.ca.gov/selfhelp/lowcost*.

POS-015

| ATTORNEY OR PARTY WITHOUT ATTORNEY:   STATE BAR NO: 207044 | FOR COURT USE ONLY |
|---|---|
| NAME: Karen R. Frostrom | |
| FIRM NAME: THORSNES BARTOLOTTA McGUIRE LLP | |
| STREET ADDRESS: 2550 Fifth Avenue, Suite 1100 | |
| CITY: San Diego   STATE: CA   ZIP CODE: 92103 | |
| TELEPHONE NO.: 619-236-9363   FAX NO.: 619-236-9653 | |
| E-MAIL ADDRESS: frostrom@tbmlawyers.com | |
| ATTORNEY FOR (Name): Plaintiffs, Jamie Powers, et al. | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** SAN DIEGO
STREET ADDRESS: 330 West Broadway
MAILING ADDRESS:
CITY AND ZIP CODE:   San Diego, CA  92101
BRANCH NAME: Hall of Justice

Plaintiff/Petitioner:  Jamie Powers, et al.

Defendant/Respondent:  Northrop Grumman Corporation, et al.

| NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL | CASE NUMBER:<br>37-2020-00020015-CU-WT-CTL |
|---|---|

TO *(insert name of party being served):* Northrop Grumman Corporation

---

**NOTICE**

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

---

Date of mailing:   via email 6/16/2020

_____
Audrey Kennedy
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

**ACKNOWLEDGMENT OF RECEIPT**

This acknowledges receipt of *(to be completed by sender before mailing):*

1. [ x ] A copy of the summons and of the complaint.
2. [ x ] Other *(specify):*

   Civil Case Cover Sheet; Notice of Case Assignment and Case Management Conference; Notice of Elibibility to eFile and Assignment to Imaging Department; Alternative Dispute Resolution (ADR) Information; and, Stipulation to Use Alternative Dispute Resolution

*(To be completed by recipient):*

Date this form is signed: _____

_____   ▶   _____
(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,       (SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF
ON WHOSE BEHALF THIS FORM IS SIGNED)                       ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

---

Page 1 of 1

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>POS-015 [Rev. January 1, 2005] | **NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL** | Code of Civil Procedure,<br>§§ 415.30, 417.10<br>www.courtinfo.ca.gov |
|---|---|---|

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**

| | | FOR COURT USE ONLY |
|---|---|---|
| STREET ADDRESS: | 330 West Broadway | |
| MAILING ADDRESS: | 330 West Broadway | |
| CITY, STATE, & ZIP CODE: | San Diego, CA 92101-3827 | |
| BRANCH NAME: | Central | |

PLAINTIFF(S):   Jamie Powers et.al.

DEFENDANT(S): Northrop Grumman Corporation

SHORT TITLE:   POWERS VS NORTHROP GRUMMAN CORPORATION [IMAGED]

| **STIPULATION TO USE ALTERNATIVE DISPUTE RESOLUTION (ADR)** | CASE NUMBER:<br>37-2020-00020015-CU-WT-CTL |
|---|---|

Judge: Gregory W Pollack                                    Department: C-71

The parties and their attorneys stipulate that the matter is at issue and the claims in this action shall be submitted to the following alternative dispute resolution (ADR) process.  Selection of any of these options will not delay any case management timelines.

☐ Mediation (court-connected)                ☐ Non-binding private arbitration

☐ Mediation (private)                        ☐ Binding private arbitration

☐ Voluntary settlement conference (private)  ☐ Non-binding judicial arbitration (discovery until 15 days before trial)

☐ Neutral evaluation (private)               ☐ Non-binding judicial arbitration (discovery until 30 days before trial)

☐ Other (*specify e.g., private mini-trial, private judge, etc.*): _____

_____

It is also stipulated that the following shall serve as arbitrator, mediator or other neutral: *(Name)* _____

_____

_____

Alternate neutral (for court Civil Mediation Program and arbitration only): _____

Date: _____                Date: _____

_____                _____
Name of Plaintiff                               Name of Defendant

_____                _____
Signature                                       Signature

_____                _____
Name of Plaintiff's Attorney                    Name of Defendant's Attorney

_____                _____
Signature                                       Signature

If there are more parties and/or attorneys, please attach additional completed and fully executed sheets.

It is the duty of the parties to notify the court of any settlement pursuant to Cal. Rules of Court, rule 3.1385.  Upon notification of the settlement, the court will place this matter on a 45-day dismissal calendar.

No new parties may be added without leave of court.

**IT IS SO ORDERED.**

Dated:  06/15/2020                              _____
                                                JUDGE OF THE SUPERIOR COURT