UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMIE POWERS, WILLIAM DILLARD, CORY JONES, JEFFERY KOUT, DOUGLAS MILLER, DAVID PERHAM, JOHN WILLIAMS, all individuals and ROES 1-50,<br><br>Plaintiffs,<br><br>v.<br><br>NORTHRUP GRUMMAN CORPORATION, a multi-national entity, and DOES 1 through 50, inclusive<br><br>Defendants. | Case No.: 20cv1506 DMS(MSB)<br><br>**ORDER (1) GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION AND DISMISSING CASE AND (2) DENYING AS MOOT DEFENDANT'S MOTION TO TRANSFER VENUE** |

This case comes before the Court on Defendant's motion to compel arbitration or, in the alternative, to transfer venue. Plaintiffs filed an opposition and Defendant filed a reply. For the following reasons, the Court grants Defendant's motion to compel and dismisses this case, and denies as moot Defendant's motion to transfer venue.

## I.

## BACKGROUND

Plaintiffs are former employees of Defendant who were employed in San Diego and deployed to the Middle East as part of the Battlefield Airborne Communications Node

Program ("BACN") "in support of the Global Hawk UAV aircraft/BD-700/E-1 lA aircraft as contracted by the US Air Force." (Compl. ¶15.) Plaintiffs allege that during their deployments, their supervisors instructed them to flat bill twelve hours of work time and 1.5 hours of travel time per day regardless of the amount of work they actually performed. Plaintiffs allege they complained to their supervisors about this practice and the general overstaffing of the Program, but were told to continue billing as directed.

Plaintiffs allege the Air Force eventually learned of this billing practice and initiated an investigation through the United States Department of Justice ("DOJ"). (*Id.* ¶22.) As part of that investigation, Plaintiffs were interviewed by management and attorneys for Defendant and attorneys from the DOJ. (*Id.*) During those interviews, Plaintiffs reported Defendant's billing practice, their complaints about that practice, and Defendant's response to those complaints, which Plaintiffs allege was "to essentially 'sit down, shut up and color.'" (*Id.*) According to Plaintiffs, the DOJ ultimately concluded that Defendant had overbilled the Air Force by over $5 million in false labor charges as part of the BACN Program. (*Id.* ¶23.)

Plaintiffs allege the DOJ entered into a multi-million dollar civil settlement with Defendant to settle those charges. (*Id.*) As part of that settlement, the DOJ agreed not to bring criminal charges against Defendant, and Defendant was allowed to continue its participation in the BACN Program. (*Id.*) Plaintiffs also allege that as part of that settlement, Defendant agreed to retaliate against Plaintiffs and other employees for the billing practice even though they were simply following directions from their supervisors and provided truthful testimony to investigators. (*Id.*) Defendant carried out that part of the agreement by then terminating Plaintiffs' employment. (*Id.* ¶25.) Plaintiffs allege they were essentially "used as sacrificial lambs in Defendant's Civil Settlement with the USAF to allow Defendants to continue their lucrative BACN services contract with the USAF." (*Id.* ¶26.)

As a result of these events, Plaintiffs filed the present case against Defendant in San Diego Superior Court alleging claims for (1) wrongful termination in violation of

fundamental public policies, (2) violation of California Labor Code § 1102.5, (3) negligent hiring, supervision and retention, (4) unfair business practices in violation of California Business and Professions Code § 17200, (5) breach of fiduciary duty, (6) breach of the implied covenant of good faith and fair dealing, (7) breach of written employer policies, (8) intentional infliction of emotional distress, and (9) negligent infliction of emotional distress. Defendant then removed the case to this Court on the basis of diversity jurisdiction, and filed the present motion.

## II.
## DISCUSSION

Defendant moves to compel arbitration of Plaintiffs' claims pursuant to International Assignment Agreements ("IAAs") and International Travel Agreements ("ITAs") each Plaintiff executed with Defendant as part of their employment. In the alternative, Defendant moves to transfer this case to the United States District Court for the Eastern District of Virginia. Plaintiffs respond that the arbitration provisions in the Agreements are unconscionable and unenforceable. They also argue the factors under 28 U.S.C. § 1404(a) weigh against transfer.[1]

///

---

[1] Plaintiffs also raise two threshold arguments: First, that Defendant waived its right to bring the present motion by filing an Answer on the same day it filed the motion, and second, that the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, does not apply to the Agreements at issue. Both of these arguments are meritless. Federal Rule of Civil Procedure 12(b) allows for the filing of motions "before pleading", which Defendant did here. *See Scottrade, Inc. v. Davenport*, No. CV-11-03-BLG-RFC, 2011 WL 13130877, at *1 (D. Mont. June 20, 2011) (finding motion was filed before answer where both documents were filed on same day but motion was filed first). As to Plaintiffs' second argument, the Agreements clearly affect interstate commerce, (*see* Reply at 3), and the Supreme Court has rejected Plaintiffs' argument that the FAA does not apply to employment contracts. *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 113-19 (2001). Accordingly, the Court proceeds to address the merits of Defendant's motion to compel.

### A. Legal Standard

The FAA governs the enforcement of arbitration agreements involving interstate commerce. *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 232–33 (2013). "The overarching purpose of the FAA ... is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011). "The FAA 'leaves no place for the exercise of discretion by the district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.'" *Kilgore v. KeyBank, Nat. Ass'n*, 718 F.3d 1052, 1058 (9th Cir. 2013) (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985)) (emphasis in original). Accordingly, the Court's role under the FAA is to determine "(1) whether a valid agreement to arbitrate exists, and if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). If both factors are met, the Court must enforce the arbitration agreement according to its terms.

Arbitration is a matter of contract, and a party "cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Tracer Research Corp. v. Nat'l Envtl. Servs. Co.*, 42 F.3d 1292, 1294 (9th Cir. 1994) (citation omitted). A court must therefore determine whether there is an agreement to arbitrate before ordering arbitration. *Wagner v. Stratton Oakmont, Inc.*, 83 F.3d 1046, 1048 (9th Cir. 1996). State law applies in determining which contracts are binding and enforceable under the FAA, if that law governs the validity, revocability, and enforceability of contracts generally. *Arthur Anderson LLP v. Carlisle,* 556 U.S. 624, 630–31 (2009).

### B. Valid Agreement to Arbitrate

As set out above, the first issue under the FAA is whether there is a valid agreement to arbitrate. Plaintiffs do not dispute that they all signed IAAs or ITAs, or that each of the Agreements contains an arbitration provision. In the IAAs, that provision in found in Paragraph 11, which states: "Arbitration of Disputes. You acknowledge that any

employment-related legal claims during or after your assignment will be subject to the Northrup Grumman Mediation/Binding Arbitration Program USHR 2-31, Arbitration and Mediation, but that the arbitration hearing and related proceedings shall be convened and conducted in Falls Church, VA U.S." (Decl. of Nozomi Bullock in Supp. of Mot. ("Bullock Decl."), Ex. 4, ECF No. 5-1 at 38.) The provision in the ITAs is essentially identical, save for the location of the arbitration proceedings, which are to be conducted in McLean, Virginia rather than Falls Church. (Bullock Decl., Ex. 3, ECF No. 5-1 at 31.) On their face, these provisions demonstrate the existence of a valid agreement to arbitrate.

"Once it is established that a valid agreement to arbitrate exists, the burden shifts to the party seeking to avoid arbitration to show that the agreement should not be enforced." *Yeomans v. World Fin. Grp. Ins. Agency, Inc.*, No. 19-CV-00792-EMC, 2020 WL 5500453, at *5 (N.D. Cal. Sept. 11, 2020) (citing *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 92 (2000)). Here, Plaintiffs argue the agreements should not be enforced because they are unconscionable.[2]

"Unconscionability has 'both a procedural and a substantive element, the former focusing on oppression or surprise due to unequal bargaining power, the latter on overly harsh or one-sided results.'" *Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1023 (9th Cir. 2016) (quoting *Sanchez v. Valencia Holding Co., LLC*, 61 Cal.4th 899, 910 (2015)). "Both procedural and substantive unconscionability must be present in order for a clause to be unconscionable, but they need not necessarily be present to the same degree." *Id.* (citing *Armendariz v. Found. Health Psychcare Services*, 24 Cal.4th 83, 114 (2000)). Rather, a "sliding scale" approach is used "to determine unconscionability—greater substantive unconscionability may compensate for lesser procedural unconscionability." *Chavarria v.*

---

[2] The parties dispute whether Virginia or California law applies to the issue of the validity and enforceability of the agreements, with Defendant assuming Virginia law applies and Plaintiffs relying on California law. Regardless of this dispute, Defendant argues the result under California and Virginia law is the same. (Mot. at 6.) Therefore, the Court will proceed to analyze this issue under California law.

*Ralphs Grocery Co.*, 733 F.3d 916, 922 (9th Cir. 2013) (citing *Armendariz*, 24 Cal. 4th at 114).

### 1. Procedural Unconscionability

As mentioned above, "[p]rocedural unconscionability concerns the manner in which the contract was negotiated and the respective circumstances of the parties at that time, focusing on the level of oppression and surprise involved in the agreement." *Id.* (citations omitted). "Oppression addresses the weaker party's absence of choice and unequal bargaining power that results in 'no real negotiation.'" *Id.* (quoting *A & M Produce Co. v. FMC Corp.*, 135 Cal. App. 3d 473, 186 Cal. Rptr. 114, 122 (1982)). "Surprise involves the extent to which the contract clearly discloses its terms as well as the reasonable expectations of the weaker party." *Id.* (citing *Parada v. Super. Ct.*, 176 Cal. App. 4th 1554, 98 Cal. Rptr. 3d 743, 757 (2009)).

Here, Plaintiffs argue the agreements are procedurally unconscionable because they were required to sign the ITAs and IAAs as a condition of their employment. Defendant disputes this, asserting Plaintiffs were required to sign the Agreements as a condition of their overseas deployments only, not as a condition to employment generally. (Reply at 5.) Nevertheless, even assuming some part of Plaintiffs' employment was conditional on their assent to the Agreements, Defendant argues that does not render the arbitration agreements procedurally unconscionable.

Assuming there was some measure of adhesion in the Agreements, that would give rise to "a degree of procedural unconscionability[.]" *Lang v. Skytap, Inc.*, 347 F.Supp.3d 420, 427 (N.D. Cal. 2018). However, the adhesive nature of the Agreements, standing alone, would not make the arbitration agreements "per se unenforceable." *Id.* Rather, to find the arbitration agreements unenforceable, the Court would still have to "find a high degree of substantive unconscionability, in addition to the existing minimal procedural unconscionability due to the adhesiveness of the contract." *Id.* (citing *Dotson v. Amgen, Inc.*, 181 Cal. App. 4th 975, 982 (2010)). Accordingly, the Court turns to the issue of substantive unconscionability below.

### 2. Substantive Unconscionability

"A contract is substantively unconscionable when it is unjustifiably one-sided to such an extent that it 'shocks the conscience.'" *Chavarria*, 733 F.3d at 923 (quoting *Parada*, 176 Cal.App.4th 1554, 98 Cal.Rptr.3d at 759). Here, Plaintiffs argue the arbitration agreements are substantively unconscionable because arbitration in Virginia would be prohibitively expensive for Plaintiffs, and because they are unlikely to find a neutral arbitrator in Defendant's home state of Virginia.

Plaintiffs' first argument is essentially a challenge to the arbitration agreements' forum selection clauses. In *Smith, Valentino & Smith, Inc. v. Superior Court*, 17 Cal. 3d 491, 495–96, 131 Cal. Rptr. 374 (1976) (In Bank), the California Supreme Court "joined the 'modern trend which favors enforceability' of forum selection clauses, and concluded 'that forum selection clauses are valid and may be given effect, in the court's discretion and in the absence of a showing that enforcement of such a clause would be unreasonable.'" *Tompkins*, 840 F.3d at 1027 (quoting *Smith, Valentino*, 17 Cal. 3d at 495–96). "A clause would be unreasonable if 'the forum selected would be unavailable or unable to accomplish substantial justice.'" *Id.* (quoting *Smith, Valentino*, 17 Cal. 3d at 494). Inconvenience and expense of the forum, however, do not meet that standard. *Id.* (citing *Smith, Valentino*, 17 Cal. 3d at 496). Not surprisingly, therefore, Plaintiffs have not cited a single case holding that the costs associated with traveling to another state as contractually agreed to would render the agreement substantively unconscionable.

Pursuant to the IAAs and ITAs, Plaintiffs agreed to travel substantial distances for their employment, which occurred primarily in the Middle East. As a result, the actions that form the basis of the claims here took place overseas. (Reply Br. at 7.) Plaintiffs agreed that disputes arising out of that employment would take place in Virginia, a logical choice given that Defendant is headquartered there and controlled Plaintiffs' work and assignments from that location. *Id.* The forum selection clause is not unreasonable under these circumstances. *See Gountoumas v. Giaran, Inc.,* No. CV 18-7720-JFW(PJWx), 2018 WL 6930761, at *10-11 (C.D. Cal. Nov. 21, 2018) (compelling California plaintiff to

arbitrate in Massachusetts and noting inconvenience and additional expense do not render selected forum unreasonable). Accordingly, Plaintiffs' first argument does not demonstrate the arbitration agreements are substantively unconscionable.

Plaintiffs' second argument regarding their inability to find a neutral arbitrator in Defendant's home state of Virginia is also unpersuasive. Indeed, it is purely speculative and not supported by any legal authority. As Defendant points out, the arbitration agreements set out the procedure for selecting an arbitrator, which requires participation by both parties. (*See* Bullock Decl., Ex. A, ECF No. 5-1 at 15.) The parties are required first to "confer in an attempt to agree on a mutually acceptable arbitrator." (Bullock Decl., Ex. A, ECF No. 5-1 at 15.) If the parties are unable to agree, they must then request a list of proposed arbitrators, and go through that list until one is selected. (*Id.*) This kind of process has failed substantive unconscionability challenges in at least one other case, *see Warren v. Del Taco Restaurants, Inc.*, No. EDCV180082JGBSPX, 2018 WL 6167937, at *6 (C.D. Cal. Apr. 23, 2018), and it survives Plaintiffs' challenge here. Accordingly, the Court finds the arbitration agreements are not substantively unconscionable.[3]

In sum, although there is some degree of procedural unconscionability associated with the adhesive nature of the Agreements, Plaintiffs have failed to show the arbitration agreements are in any way substantively unconscionable. When considered under the sliding scale approach described above, the Court finds the arbitration agreements are not unconscionable, and are therefore valid and enforceable.

---

[3] Plaintiffs' raise one additional argument against enforcement of the arbitration agreements, namely, that in California, mandatory arbitration agreements in the employment context are disfavored as a matter of public policy. In support of this argument, Plaintiffs cite California Assembly Bill 51, which was signed into law on October 10, 2019. However, Plaintiffs acknowledge that enforcement of this law has been enjoined by a federal court, and it is "expressly not" retroactive. (Opp'n at 13-14.) Therefore, this argument does not warrant a finding that the arbitration agreements are unenforceable.

**D.  Scope of the Arbitration Provision**

The only other issue is whether the arbitration agreement covers Plaintiffs' claims. Plaintiffs do not raise any arguments on this issue, which the Court construes as an acknowledgement that their claims are covered by the arbitration agreement. To the extent there is any dispute, the Court finds the language of the agreement is broad enough to cover the claims asserted. (*See* Bullock Decl., Ex. 3, ECF No. 5-1 at 31) (stating "any employment-related legal claims during or after your travel" are subject to arbitration).

### III.
### CONCLUSION AND ORDER

For the reasons set out above, the Court grants Defendant's motion to compel arbitration and dismisses this case, and denies as moot Defendant's motion to transfer venue.

**IT IS SO ORDERED**.

Dated:  October 29, 2020

Hon. Dana M. Sabraw
United States District Judge